J. A. POYNTER, APPELLANT, v. FOGEL CONSTRUCTION COMPANY, RESPONDENT.

Kansas City Court of Appeals.   May 3, 1926.

*Clif Langsdale* for appellant.

*Lathrop, Morrow, Fox & Moore* for respondent.

ARNOLD, J.—This is a suit in damages for personal injuries. Defendant is a corporation engaged in the business of constructing build-

ings. Plaintiff is an iron worker and at the time of the injury in question was employed by defendant.

On January 24, 1922, defendant was engaged in erecting a building for use as a garage on Wyandotte street between Twelfth and Thirteenth streets in Kansas City and plaintiff was employed in the work of constructing columns for concrete reinforcement. The process consists of the preparation of hollow wooden framework within which is placed the requisite number of steel rods, about eight to twelve in number, being an inch, more or less, in diameter and sixteen feet long. These rods are fastened at regular intervals on the inside of iron bands by the use of small wire, called tie wire. When completed, the frame is a hollow pillar, cylindrical or square in shape as may be desired, having the metal frames on the inside. Into the frame thus formed, the concrete is poured and when "set" a reinforced concrete pillar is made. In tying the rods to the bands, or hoops, a small sized wire is used as the tie, said wire being about the size of the lead in an ordinary lead pencil, or common baling wire, and is known and designated by the standards in use as No. 16. The record shows that wire of this size ordinarily is used for the purpose above described and that the custom is to use annealed wire because it is more pliable and easier to use. It is purchased in rolls, or spools, and is unwrapped as needed and segments from the exposed end are cut to desired lengths.

The petition alleges:

"That said wire was much harder and stiffer and had much more recoiling strength than the wire ordinarily and customarily used for such purposes by contractors and iron workers generally in Kansas City, Missouri, and vicinity, at and prior to said time, and that because thereof when plaintiff cut said wire, same recoiled and sprung and struck plaintiff as hereinafter set out."

Plaintiff was a foreman, and, on the occasion of the injury, was engaged with one helper, Clark by name, in the construction of one of these steel frames. The rods had been placed and it became necessary to tie them to the iron bands by means of the wire as above described. Plaintiff stepped to the bale, or spool, of wire near him on the floor and with a pair of pliers cut off a piece about four feet in length. The petition charges that one of the loose ends of said wire recoiled and struck plaintiff in the eye, causing the injury for which damages are sought.

The answer is a general denial with pleas of contributory negligence and assumed risk.

With the issues thus made the cause went to trial to a jury. At the close of plaintiff's evidence, defendant asked an instruction in the nature of a demurrer which the court marked "given" whereupon plaintiff took an involuntary nonsuit with leave. Motion to set aside the nonsuit was overruled and plaintiff has appealed.

At the threshold of our inquiry we are confronted with defendant's motion to dismiss the appeal because the record shows that no judgment or order was ever made in the trial court from which an appeal could be taken, and therefore this court has no jurisdiction to determine this appeal. As to whether this motion should be sustained will be determined by the record. It is urged that the nonsuit taken by plaintiff is shown by the record to have been voluntary, and not an involuntary nonsuit. Recourse to the record reveals the following:

The record proper shows the following entry:

"This cause coming on for trial on the 8th day of October, 1923, the same being the 25th day of the regular September Term, 1923, at Kansas City, of said circuit court of Jackson county, Missouri, a jury having been duly empanelled, the trial of the cause was begun and at the close of the evidence on the part of the plaintiff, the defendant asked an instruction in the nature of a demurrer to the evidence which the court marked "Given" and the plaintiff deeming the law as then announced by the court precluded him from recovery in this cause, took and suffered an involuntary nonsuit with leave to move to set the same aside."

The record proper also shows that by motion duly filed, plaintiff asked that the involuntary nonsuit be set aside, but this motion was overruled. The bill of exceptions shows the following then occurred:

"The Court: The court gives the instruction to the effect that under the pleadings and plaintiff's evidence, plaintiff is not entitled to recover and also indicates that he will instruct a verdict for the jury to return a verdict for the defendant.

The bill of exceptions further contains the following which was the court's direction to defendant's counsel:

"Draw your form of verdict and let it show that at the direction of the court, the jury find a verdict on the issues for the defendant."

Thereafter the bill of exceptions contains the following:

"The Court: All right, let your record show, the court having marked the instructions A and B as requested by the defendant 'Given' and was about to direct the jury to return a verdict for defendant, and before such direction was given to the jury, plaintiff takes an involuntary nonsuit, with leave to move to set the same aside.''

Our ruling, therefore, on the motion to dismiss the appeal is dependent upon the fact as to whether or not the nonsuit was voluntary or involuntary. The record refers to it as involuntary but, of course, calling it such does not make it involuntary. The question must be decided from the facts of record and the rules applicable thereto.

In Diamond Rubber Co. v. Wernicke, 166 Mo. App. 128, 148 S. W. 160, this court in an opinion by JOHNSON, J., says:

"A nonsuit will be deemed involuntary only when it is prompted by an adverse ruling of the court which is preclusive of a recovery

by plaintiff. Until there is an actual ruling which puts a complete stop to any further progress on the part of the plaintiff he must keep going despite adverse rulings.''

We think it is clear from the record herein that the nonsuit taken by plaintiff was involuntary. Defendant's motion to dismiss the appeal is overruled.

Based upon the ruling of the Supreme Court in State ex rel. v. Trimble et al., defendant files a motion to affirm the judgment rendered in the court below and plaintiff counters with a motion to reverse the judgment. For reasons hereinafter stated, both these motions are hereby overruled.

The only question for our consideration on this review is whether the testimony introduced by plaintiff was sufficiently substantial to warrant the submission of the issues to the jury. As applied to the first charge of negligence plaintiff's testimony shows that the wire furnished was not annealed and therefore had a tendency to recoil; that it was of the size customarily used for the purpose to which it was to be applied, i. e. it was No. 16 wire; that it had been used by other workmen for the same purpose, and that one-fourth to one-half of the said roll had been so used without accident or damage to anyone. Plaintiff's evidence was to the effect that even annealed wire sometimes will recoil slightly when cut, but not to the extent it did in this instance; that such occurrences are rare and such accidents as befell plaintiff likewise are rare.

The testimony further shows that defendant had been warned of the condition of the wire as to its stiffness and rigidity and that it was not suited for the purpose for which it was being used. The man Clark, who was plaintiff's helper and was working with plaintiff at the time of the injury, testified that he, with another workman, had been using the identical roll of wire in question previous to the injury, and that he had told the foreman, Armstead, ''that wire was too stiff to use; it wouldn't hold the ties right, and it was very springy and we should have to double it at times which took more time and it didn't work right, *altogether too stiff to use.*'' (Italics ours.)

From the testimony of this witness and that of plaintiff himself, it must be concluded that the wire in question was not such as was commonly used for the purpose to which it was then being applied: that the general foreman had been told that the wire was too stiff. This notice was sufficient to put defendant on inquiry as to the quality of the wire and the situation could have been met by an inspection and action on the part of defendant. Plaintiff testified that the wire in question was not such as ordinarily was used for such purpose; that it had a tendency to recoil, or spring back, when cut and that the foreman, Armstead, knew this condition of the wire and did not warn plaintiff. The evidence shows the wire was No. 16. black in

color, and not annealed. In all appearances it was similar to the annealed wire commonly used for that purpose.

The rule is that in considering the question as to, whether or not a demurrer should have been sustained, the appellate court must treat the plaintiff's evidence as true and give him the benefit of all reasonable inferences which may be drawn therefrom. We think plaintiff's testimony insufficient to support his first allegation of negligence, or to warrant the submission of the question of defendant's negligence arising under this charge, to the jury. In this conclusion we are following the reasoning of the Supreme Court (opinion by RAGLAND, P. J.) in State ex rel. v. Trimble et al., 274 S. W. 1078. The first charge of negligence proceeds upon the theory that there was a defect in the tie wire which rendered it not reasonably safe for the purpose for which it was being used, but, as held in that case, a most critical examination of the facts stated will not disclose any basis for such hypothesis. The opinion then proceeds:

"The wire was harder, stiffer and had greater recoiling strength than annealed wire. These qualities, however, were not faults, blemishes, or imperfections, they were merely the constant, unfailing characteristics of unannealed wire. There was no showing that the unannealed wire was furnished through inadvertence or mistake, and in the absence of such showing it must be presumed that the defendant knew what it was doing and that it intended that unannealed wire, rather than the annealed, should be used in the construction of the building it was then erecting. It is true that some of its employees were of the opinion that annealed wire was more suitable for use as tie wire than the unannealed, but defendant no doubt used the unannealed for reasons that were wholly satisfactory to itself."

It is held also that the evidence fails to show that the use of unannealed wire is dangerous, but merely discloses that some precaution must be taken in cutting it in order to avoid injury. The opinion proceeds:

"It seems undubitable that the defendant could use unannealed wire as material entering into the construction of the building it was erecting without incurring liability to those of its employees who were required to handle it, and this notwithstanding that it was the general custom to use the annealed wire in similar constructions. Even if the wire be regarded as an appliance, still defendant incurred no liability merely because it failed to furnish one which required somewhat less care in its use. With respect to the use of unannealed wire, whether it be regarded as an appliance, or simply as material entering into the construction of the building, the defendant had a right to conduct its business in its own way, and plaintiff by entering or continuing in its employ assumed the risks incident to such use. The applicable principles are so familiar and have been so often announced

in decisions of this court that we deem it unnecessary to cite the cases.''

Therefore it must be held that insofar as the first charge of negligence in the petition is concerned, the ruling of the trial court was proper.

However, another charge of negligence in the petition remains to be discussed, to-wit, negligent failure to warn plaintiff. In the opinion of the Supreme Court, just cited, it is said:

''If the excerpt above quoted from respondent's brief fairly epitomizes the facts which plaintiff's evidence tended to show, and the negligent failure to warn was properly pleaded, it would seem clear that the circuit court was in error in sustaining defendant's demurrer to the evidence.''

The excerpt referred to is as follows:

''The evidence showed that the plaintiff for a long period of time in compliance with the general custom in building circles in Kansas City and vicinity, had been furnished with No. 16 black annealed wire for the purpose of wrapping bands to reinforcing rods; that that wire was soft and pliable and not springy and that it had no recoiling strength; that on the day of his injury, without any notice or warning of any kind, or character, he was furnished with a bale of wire identical in appearance with the wire customarily used; that being thus lulled into a sense of security, he reached out and cut off a piece of the wire, when it recoiled and struck him in the eye. This wire was not the kind that was customarily used, not the kind he had a right to believe it was, but on the other hand it was not annealed and therefore, it was stiff and springy and had great recoiling strength.''

The only question remaining for our determination, therefore, is as to whether or not the petition properly pleads negligent failure to warn, and to this end we need only refer to the allegations of the petition, as follows:

''For assignment of negligence against the defendant, plaintiff states that the defendant failed to exercise ordinary care to furnish him with reasonably safe appliances and materials with which to work in that the defendant negligently furnished him with said wire which was as aforesaid much harder and stiffer and which had greater recoiling strength than the wire customarily used as aforesaid, which wire was dangerous to cut as aforesaid, all of which the defendant knew or by the exercise of ordinary care would have known prior to furnishing same to the plaintiff. Plaintiff states that said negligence caused his injuries herein complained of.

''For other and further assignment of negligence against the defendant, plaintiff states that the defendant furnished him said wire, which he was required to cut as aforesaid, and negligently failed to

warn him of the qualities of said wire as above described when the defendant knew or by the exercise of ordinary care would have known that for the plaintiff to cut said wire without said information was dangerous in that by and through the ordinary method of cutting ordinary wire used for such purposes that same would recoil and spring and strike against plaintiff. Plaintiff states that said negligence of the defendant caused his injuries as herein complained of.

"For other and further assignment of negligence against the defendant, plaintiff states that the defendant negligently ordered and directed him to cut said wire as aforesaid without warning him of the qualities of the above-described wire as aforesaid when the defendant knew or by the exercise of ordinary care would have known that without said information plaintiff might and would cut said wire without taking said qualities into consideration, and that because thereof the wire might and would recoil, spring and strike plaintiff and injure him," etc.

Testimony on behalf of plaintiff tended to show that he had been at work for defendant at this particular work for only a few hours; that his helper, Clark, testified that he and another workman had been using the identical wire in question previous to the occurrence, and that witness had told the foreman Armstead that the wire was too stiff for use; that it would not hold the ties right and was very springy and had to be doubled, at times, which took more time, and it did not work right and was altogether too stiff for use.

Plaintiff testified that the wire in question was not such as ordinarily was used for such purposes; that it had a tendency to recoil, or spring back, when cut, and that the foreman, Armstead, knew this condition of the wire and did not warn plaintiff. The evidence shows that the wire was No. 16, black in color and not annealed, and that in appearance it was similar to the annealed wire commonly used for that purpose, and that on the day in question plaintiff was furnished with a bale of wire identical in appearance with the wire customarily used, and that without being warned of the character of the wire, plaintiff cut a piece therefrom and was injured. We think this evidence was sufficiently substantial to support a verdict for plaintiff and that the trial court erred in sustaining the demurrer.

The judgment is reversed and the cause remanded for a new trial. *Bland, J.*, concurs; *Trimble, P. J.*, absent.